# 12-4341-cv

## United States Court of Appeals

*for the*

## Second Circuit

———————◆———————

MARCEL FASHIONS GROUP, INCORPORATED,
Florida Corporation,

*Plaintiff-Appellant,*

— v. —

LUCKY BRAND DUNGAREES, INCORPORATED, a Delaware Corporation,
LIZ CLAIBORNE, INCORPORATED, a Delaware Corporation, LUCKY
BRAND DUNGAREES STORES, INCORPORATED, a Florida Corporation,

*Defendants-Appellees.*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX
## FOR PLAINTIFF-APPELLANT

LAW OFFICES OF MATTHEW A. PEK, ESQ.
*Attorney for Plaintiff-Appellant*
387 Grand Street, Suite K-203
New York, New York 10002
(516) 238-4006

## <u>CORPORATE DISCLOSURE STATEMENT PURSUANT TO FRAP 26.1</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure ("FRAP"), counsel for Plaintiff-Appellant, Marcel Fashions Group, Inc. ("Appellant") hereby certifies that Appellant is not owned by a parent corporation and no publically-held corporation holds more than ten percent (10%) of Appellant's stock.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................iii

JURISDICTIONAL STATEMENT ..................................................................... 1

STATEMENT OF ISSUES PRESENTED ...............................................................

STATEMENT OF THE CASE ...............................................................................

SUMMARY OF ARGUMENT ...............................................................................

STANDARD OF REVIEW......................................................................................

ARGUMENT ...........................................................................................................

      I.      POINT HEADING I................................................................................

            A.     PH-Sub-One ..................................................................................

            B.     PH-Sub-Two ..................................................................................

      II.     POINT HEADING II ............................................................................

CONCLUSION.......................................................................................................

# <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u>                                                                                     <u>**Page #**</u>

*Accashian v. City of Danbury*,
No. CV 970147228S (Hodgson, J.),
1999 WL 30594 (Conn. Super. Jan. 8, 1999) ..................................................... 22-23

*Allstate Motor Club, Inc. v. SHL Systemhouse, Inc.*,
97-C-5354, 1998 WL 575279 (N.D. Ill. Sept. 1, 1998)..........................................19

<u>**Statutes**</u>                                                                                  <u>**Page #**</u>

28 U.S.C. § 1291 ....................................................................................................1, 2

28 U.S.C. § 1332 ....................................................................................................... 1

## JURISDICTIONAL STATEMENT

This is an action for injunctive relief based on continued trademark infringement and false designation of origin under the Lanham Trademark Act of 1946 (15 U.S.C. § 1051 *et seq.*) (the "Lanham Act"), 15 U.S.C §§ 1114, 1116 and 1125, for reverse confusion and false designation of origin under 15 U.S.C. §§ 1114 and 1125, for federal unfair competition under 15 U.S.C. § 1125(a), and for the related claim of common law trademark infringement and common law unfair competition under 15 U.S.C. § 1125(a) and Fla.Stat. § 495.151.

The district court had subject matter jurisdiction over the federal claims under 15 U.S.C. § 1121, 28 U.S.C. §§ 1331 and 1338, and over the remaining claims asserted below under 28 U.S.C.A.  § 1367.

Jurisdiction in this Court is proper under 28 U.S.C. § 1291, because this is an appeal from a final judgment of the district court disposing of all claims by the parties; in particular, all claims asserted by plaintiff-appellant in its original Complaint in the district court below, and likewise of all claims that plaintiff-appellant *sought* to assert *via* its filing a motion for leave to amend the complaint in the district court below. The final judgment in this matter was entered on September 26, 2012, and the notice of appeal was filed on October 26, 2012.  This appeal is therefore timely pursuant to all applicable Federal Rules of Appellate Procedure ("FRAP").  FRAP § (a)(1)(A).

## STATEMENT OF THE ISSUES PRESENTED ON APPEAL

(1)     Whether the District Court providently applied the doctrine of *res judicata* in finding that Marcel's action below and the claims asserted against Appellees therein seeking injunctive relief were barred as a matter of law, despite the inclusion and incorporation of the April 22, 2009 Permanent Injunction Order in the District Court's Final Judgment;

(2)     Whether the District Court erred in applying the doctrine of *res judicata* to preclude Marcel's claim for injunctive relief as against Appellees, where the jury found in the prior 2005 action that Appellees were in fact, liable for infringing Marcel's "GET LUCKY" trademark;

(3)     Whether the District Court erred in concluding that neither the April 22, 2009 Permanent Injunction Order and/or the Final Judgment (which incorporated by reference the Permanent Injunction Order, and even quoted the permanent injunction language) did not bar, prohibit, preclude or otherwise enjoin Appellees from using marks that were "colorable imitations" of Marcel's "GET LUCKY" trademark; and

(4)     Whether the District Court erred in concluding that the Final Judgment, which incorporated by reference the April 22, 2009 Permanent Injunction Order (and recited and quoted the injunctive language contained therein), did not, as a matter of fact or law, enjoin Appellees' continued use of Marcel's trademark "GET LUCKY", notwithstanding that both Judge Swain and the jury in the 2005 Action below ultimately found that Appellees were liable for infringing Marcel's "GET LUCKY" trademark.

## STATEMENT OF THE CASE

On April 29, 2011, the plaintiff-appellant, Marcel Fashions Group, Inc. (hereinafter, "Appellant" or "Marcel") commenced this trademark infringement action in the United States District Court for the Southern District of Florida, seeking injunctive relief and monetary damages, based upon well-founded allegations that defendants-appellees, Lucky Brand Dungarees, Inc., Liz Claiborne, Inc., and Lucky Brand Dungarees Stores, Inc. (hereinafter collectively referred to as "Appellees") had used, and were continuing to use certain marks that infringed upon Marcel's "GET LUCKY" trademark.

In particular, Marcel asserted claims against Lucky for, *inter alia*, (i) reverse confusion, trademark infringement and false designation of origin pursuant to 15 U.S.C. § 1114 and 1125, (ii) unfair competition pursuant to 15 U.S.C. 1125(a) and Section 43(a) of the Lanham Act, and (iii) common law trademark infringement pursuant to 15 U.S.C. § 1125(a) and unfair competition under Fla.Stat. § 495.151. On May 27, 2011, Appellees moved to change venue and, on August 9, 2011, this action was transferred to the SDNY, and again transferred/assigned to the Hon. Laura T. Swain (U.S.D.J.).

The "GET LUCKY" trademark, owned and registered by Marcel, along with several of Appellees' own competing and confusingly similar marks, were the subject of a prior lawsuit before the United States District Court for the Southern

District of New York ("SDNY"), entitled *Lucky Brand Dungarees, Inc., Liz Claiborne, Inc.* v. *Ally Apparel Resources, LLC d/b/a Get Lucky, Key Apparel Resources, Ltd., Marcel Fashions Group, Inc. and Ezra Mizrachi*, Civil Action No. 05-CV-6757 (LTS) (MHD) (the "2005 Action").

Importantly, on April 22, 2009, the SDNY entered an order granting Marcel partial summary judgment as to certain of its counterclaims, and issued a permanent injunction (the "Permanent Injunction Order"). The Permanent Injunction Order permanently enjoined and prohibited Appellees, *inter alia*, "from using in commerce any reproduction, counterfeit, copy or colorable imitation of [Marcel]'s GET LUCKY trademark on or in connection with men's and women's apparel, fragrances and accessories." The 2005 Action resulted in a Final Order and Judgment entered by the Hon. Laura T. Swain (U.S.D.J.) of the Southern District of New York on May 28, 2010 (the "Final Judgment").

In the action below before Judge Swain, three (3) motions were filed by the parties: (1) Appellees' motion for summary judgment; (2) Appellant's motion for leave to file an amended complaint; and (3) Appellant's motion for sanctions against Appellees and seeking to hold Appellees in civil contempt of court for knowingly continuing to use certain of Appellees marks which were "colorable imitations" of Marcel's "GET LUCKY" trademark, and therefore, in direct

4

violation of the SDNY's Permanent Injunction Order and Final Judgment, which incorporated by express and explicit reference in the Permanent Injunction Order.

Marcel argued that the Final Judgment included a permanent injunction (as rendered in the April 22, 2009 Permanent Injunction Order), as the Permanent Injunction Order was incorporated by explicit reference into the Final Judgment. Appellees argued that the action was barred by the doctrine of *res judicata*.

After reviewing the parties' respective motions, on September 25, 2012, the District Court (S.D.N.Y.) (LTS) issued a Memorandum Opinion and Order:  (1) GRANTING Appellees' motion for summary judgment on *or well-financed againsdicata* grounds; (2) DENYING Appellant's motion for leave to file and serve an amended complaint; and (3) DENYING Appellant's motion for sanctions against Appellees and to hold Appellees in contempt of court for violating the Permanent Injunction Order and Final Judgment incorporating the Permanent Injunction Order.

## SUMMARY OF ARGUMENT

In brief, in light of the conclusive injunctive relief that the district court granted to Appellant and against Appellees, and entered on April 22, 2009, there can be no reasonable or logical reading of *either* the April 22, 2009 Permanent Injunction Order *or* the Final Judgment in the district court action below, which permits any inference or conclusion whatsoever to the effect that having been awarded compensatory and punitive damages, following the jury's finding of infringement in Appellant's favor, that all the same, no injunctive relief was awarded to Appellant in the action below.

## STANDARD OF REVIEW

The standard of review in this case, his Court must review de novo the District Court's summary dismissal of the complaint on the grounds of *res judicata* which applies only to claims based on a cause of action that was previously litigated. *Greater L.A. Council on Deafness, Inc. v. Baldridge*, 827 F.2d 1353 (9th Cir. 1987); and this Court, pursuant to the law, must review *de novo* the District Court's grant of summary judgment and; judgment shall only be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See* FRCP § 56(c). *Pro Fitness Physical Therapy Center v. Pro-Fit*

*Orthopedic & Sports Physical Therapy, P.C.,* 314 F. 3d 62 (2d Cir. 2002) explicitly applies the *de novo* standard to the review of a summary judgment motion presenting an acquiescence defense. *Id*. at 67.

## ARGUMENT

**I.** **As a Cursory Review of the The District Court's Docket Will Readily Reveal that Appellant's Claims of Willful Trademark Infringement and Related Lanham Act Claims, Appellees' Continuing Acts of Infringement Are NOT Barred on *Res Judicata* Grounds, Premised on the 2005 Litigation is Contrary to the <u>Overwhelming Wealth of Jurisprudence on this Issue and Must be Reversed on Appeal.</u>**

Under the doctrine of res judicata, or "claim preclusion," a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *St. Pierre v. Dyer, 208 F.3d 394, 399 (2d Cir. 2000)*. "To prove that a claim is precluded under the res judicata doctrine, 'a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action.'" *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir.2001) (quoting *Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 284-85 (2d Cir. 2000)). Where, as here, the Final Judgment was entered by the district court on grant of Appellees' motion for summary judgment and denial of Appellant's (i) motion for leave of Court to amend the complaint,

A first judgment only has preclusive effect where the transaction or connected

series of transactions at issue in both suits *is the same*, that is "whe[re] the same evidence is needed to support both claims, and whe[re] the facts essential to the second were present in the first." *See, e.g, Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 329 (1955); *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir.1992). "*Litigation over other transactions, though involving the same parties and similar facts and legal issues, is not precluded.*" *Greenberg v. Board of Governors of the Federal Reserve System*, 968 F.2d 164, 168 (2d Cir. 1992) (citations omitted).

"To ascertain whether two actions spring from the same transaction or claim, [courts] look to whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000). None of the requisite factors are met here. As discussed in detail below, the litigation and Final Judgment from Appellant hereby appeals, is limited exclusively to claims that arose *after* the 2008 Prior Litigation. Appellant's claims as pled in the Complaint against Appellees – who , and even more so thus are not "related in time, space or origin," could not have formed a "convenient trial unit," and, definitively, could not have been raised in the Prior Litigation. The district court never the less held that it would be "futile" to allow to amend its complaint, because the claims asserted in the 2005 Action

8

were barred by *res judicata* based on the 2022 Suit\\\\.

Although the court's reasoning is far from clear, what is clear is that the district court's ruling is squarely contradicted by overwhelming precedent. *Res judicata* does not serve as a bar against claims that arose *after* the prior litigation, regardless of the legal theories on which the claims are based. The district court's failure to follow substantial legal precedent on this issue is inexcusable, and its ruling must be overturned.

### a. The Law is Clear That Res Judicata Does NOT Bar Claims that Arose After the Prior Litigation.

As litigants became*Res judicata* does not bar claims based on violations of legal rights that occurred *after* the first litigation. "While a previous judgment may preclude litigation of claims that arose "prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." *See Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328, 75 S.Ct. 865, 99 L.Ed. 1122 (1955). The law on this point is substantial and incontrovertible.

There is no claim preclusion where "the second litigation involved different transactions, and *especially subsequent transactions*[.]" *Marvel Characters, Inc. v. Simon*, 310 F.3d 280 (2nd. Cir. 2002) (holding that prior adjudication of copyright violation based on authorship issue did not preclude a second copyright claim based on termination rights though also based on issue of authorship). *See also,*

*e.g.*, *Lawlor v. National Screen Service Corp.*, 349 U.S. at 328 (judgment in antitrust suit does not preclude later suit based on " 'essentially the same course of conduct,' " where conduct in second suit postdated the first judgment); *Greenberg v. Board of Governors of the Federal Reserve System*, 968 F.2d 164, 168-70 (2d Cir. 1992) (holding *res judicata* did not preclude later action between same parties based on same conduct but different financial transactions); *Prime Management Co. v. Steinegger*, 904 F.2d at 816 (holding *res judicata* did not preclude an action based on subsequent breaches of same contract in the same way); *NLRB v. United Technologies Corp.*, 706 F.2d at 1260 (holding subsequent labor conflicts between same parties over same type of employee activity at different times and places not barred by *res judicata*); *Klein v. John Hancock Mutual Life Ins. Co.*, 683 F.2d 358, 360 (11th Cir.1982) (judgment based on long-term continuing contract, which is subject to intermittent breach during its term, does "not automatically bar a later suit for a second, identical breach"); *Balderman v. United States Veterans Administration*, 870 F.2d at 62 (employee's claim for employment termination in violation of tenure rights not barred by judgment entered in earlier action brought prior to that termination).

> **b.**   **Well-Established Second Circuit PrecedentWithin the Second Circuit Have Consistently and Uniformly Reaffirmed the Well-Settled Rule of Law that the Doctrine of *Res Judicata* Does Not Bar New Claims – Even if Premised Upon  JBecause It May Be Based on a Legal Issue Asserted in Prior Litigation.**

*Res judicata* does not bar claims based on violations of legal rights that occurred *after* the first litigation, irrespective of whether the claims may be based on the same legal issues or even whether they may contain some overlapping facts. The fact that "a first and second suit may involve essentially *the same course of wrongful conduct is not decisive*" on the issue of whether the first claim has preclusive effect on the second. *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir. 1997); *see also, e.g., Prime Management Co. v. Steinegger*, 904 F.2d 811, 815 (2d Cir .1990) (subsequent breach of same contract not barred).

"[*N*]or is it dispositive that the two proceedings involved the same parties, similar or overlapping facts, and similar legal issues.*" Interoceanica, supra*, 107 F.3d at 91 (holding that litigation concerning same parties, same issues of law and parallel facts, did not arise out of the same "transaction or connected series of transactions" because second litigation concerned voyages that occurred *after* the ones litigated in the prior action); *see also, e.g., NLRB v. United Technologies Corp.*, 706 F.2d 1254, 1259-60 (2d Cir. 1983) ( "the circumstance *that several operative facts may be common to successive actions between the same parties does not mean that the claim asserted in the second is the same claim* that was litigated in the first").

As the Restatement explains, when a contract is to be performed over a period of time and one party has sued for a breach but has not repudiated the

contract, *res judicata* will preclude the party's subsequent suit *for any claim of breach that had occurred prior* to the first breach-of-contract suit, *but it will not preclude a subsequent suit for a breach that had not occurred when the first suit was brought*. Restatement (Second) of Judgments § 24 comment d. Indeed, this example has been cited by courts on myriad occasions to explain *res judicata* principles, including by this Court. *See, e.g., S.E.C. v. First Jersey Securities, Inc.*,101 F.3d 1450, 1464 (2d Cir, 1996); *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000). The district court erred as a matter of law when it held that Marcel's claims for infringement were precluded by the 2005 Action.

> **b.    The Record is Clear that the 2011 Litigation is**
> **that Arose After the 2008 Litigation and Raises Claims that Are**
> **Distinct from Those Asserted in 2008.**

TechnoMarine's 2011 Litigation is based entirely on facts that arose *after* the 2008 Litigation and its FAC is not therefore barred by *res judicata* as a matter of law. (*See supra*.) As explained by the district court, in the instant litigation, "TechnoMarine alleges that in 2011 it discovered that Giftports was selling knockoff watches on its website of Plaintiff's current 2010/2011 product line." (A at 183-184.) On this basis, Plaintiff broughtclaims against Giftports alleging trademark and copyright infringement based on the unauthorized use of TechnoMarine's LOGO, which is protected by registered trademarks and copyrights. (A at 11-14 and 16.) The FAC alleges that Giftports infringing its

trademarks and copyrights to sell "counterfeit" and "pirated" (A at 16) copies of TechnoMarine's 2010/2011 merchandise in interstate commerce. *(Id.)*

As explained in TechnoMarine's Opposition to Giftports' Motion to Dismiss, TechnoMarine's claims in the 2011 Litigation are based on TechnoMarine's recent discovery that Giftports appears to be selling infringing copies of TechnoMarine's 2010-11 product line. (A at 144-145.) Based on this, the underlying FAC alleges Trademark Infringement and counterfeiting under 15 U.S.C. §1114, False Designation of Origin under 15 U.S.C. §1125(a), and Trademark Dilution under 15 U.S.C. §1125(c). None of these allegations were made in the 2008 lawsuit.

Pap 2008 SAC does not refer to TechnoMarine's trademark or copyright registrations in its TM Logo much less assert these rights as the basis for any of its claims in the Prior Litigation.  Moreover, Plaintiff did not contend in 2008 that Defendant was selling counterfeit products, but was rather engaging in false advertising by implying that a warranty still existed. This is entirely different from the present case.


        **d.**     ***The District Court's Holding that TechnoMarine's Claims are Barred by Res Judicata is Not Supported by the Applicable Law or the Underlying Facts.***

As the case law makes clear, a stipulation of claims of claims based on a particular legal right does not forever preclude the claims party from bringing claims on the

same legal right based on different facts. (*See Supra*.) Yet, this is the erroneous conclusion of the district court's Order.

### 1. *The 2005 Action Was Based on Violations that Occurred After the 008 Litigation and Raises Claims That Were Not and Could Not Have Been Raised in 2008.*

The district court reasoned that if TechnoMarine had not, in 2008, "agreed to resolve the dispute by settlement . . . there would be *no legal question* " regarding TechnoMarine's unfair competition and tortious interference claims. Based on this, the district court concludes: "the facts underlying these separate lawsuits [therefore] form a convenient trial unit and amount to the same transaction." (A at 189 (*citing Waldman*, 207 F.3d at 108.) Even assuming *arguendo* that *TechnoMarine's* unfair competition and tortious interference can be said to "represent wrongs that are the 'same' in legal theory" as those alleged in the Prior Action," the 2008 and 2011 claims "are not related in time, space, or origin to the wrongs litigated previously, and *res judicata*, therefore, does not apply." *Interoceanica at Supra* 107 F.3d at 91. The claims are based on specific violations that were not capable of being asserted in the 2008 Litigation. The district court's conclusion that *res judicata* bars TechnoMarine from asserting subsequent violations of legal rightsthat were be at issue in the Prior Action is contrary to overwhelming authority on this issue, as discussed above.

The district court next holds that TechnoMarine's claims for trademark and copyright infringement are also precluded, because, although those claims were not raised in the 2008 Litigation, they "*could have been raised* in the 2008 Action as well." (A at 190.) Then, in a departure from its prior reasoning on the unfair competition and interferenceclaims, the court reasoned that "[n]ew legal theories do not amount to a new cause of action so as to defeat the doctrine of *res judicata*. . . . The *crucial issue is the facts* that surround the claims, not the law." (A at 190.) This reasoning also misses the mark. As explained, the 2011claimsfor trademark **\*16** and copyright infringement are based on TechnoMarine's recent discovery of new facts-- namely, that Giftports appears to be selling knockoff, counterfeit and/or pirated copies of TechnoMarine's 2010-11 products. (*See supra*.)

The district court Order appears to be based, at least in part, on a misapplication of this Court's holdings and analysis in *Waldman, supra*,207 F.3d 105, which the Court relies on heavily in its Order. (*See* A at 186, 187, 188, 190, 191 citing *Waldman*.) The district court's reliance on *Waldman* is misplaced. Waldman is instructive precisely because it supports TechnoMarine's position that its claims are not barred by *res judicata*. The court's ruling in Waldman was based on the considerable "overlapping facts" between the two cases. *Waldman*, 207 F.3d at 110. The Waldman court ultimately concluded that the second action was based on

15

violations that had already occurred prior to the first litigation. *Id.* at 113. Such is not the case here.

**CONCLUSION**

In light of the foregoing facts and governed by the controlling legal authorities set forth herein and discussed at length above, Appellants respectfully request that this Court enter an order VACATING the District Court's Judgment and reversing the District Court's Decision in all respects.

The Law Offices of
Matthew A. Pek, Esq.


By: /s/ Matthew A. Pek
     Matthew A. Pek, Esq.
*Counsel for Appellant, Marcel*
387 Grand Street, Suite K-203
New York, New York 10002
Tel.:  (516) 238-4006
Fax:  (646) 755-3672

**SPECIAL APPENDIX**

i

**SPECIAL APPENDIX**
**TABLE OF CONTENTS**

**Page**

Memorandum Opinion and Order of the Honorable
    Laura Taylor Swain, dated September 25, 2012,
    Appealed From ...................................................... SPA-1

Judgment, dated September 26, 2012, Appealed
    From................................................................... SPA-15

SPA-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

MARCEL FASHIONS GROUP, INC.,

        Plaintiff,

   -v-

LUCKY BRAND DUNGAREES, INC., LIZ
CLAIBORNE, INC., and LUCKY BRAND
DUNGAREES STORES, INC.,

        Defendants.

-------------------------------------------------------x

No.  11 Civ. 5523 (LTS)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  SEP 2 5 2012

MEMORANDUM OPINION AND ORDER

        Plaintiff Marcel Fashions Group, Inc. ("Plaintiff" or "Marcel") commenced this

trademark infringement action in the Southern District of Florida, seeking damages and

injunctive relief based on allegations that Defendants Lucky Brand Dungarees, Inc., Liz

Claiborne, Inc., and Lucky Brand Dungarees Stores, Inc. (collectively "Defendants" or "Lucky

Brand") use Lucky Brand marks that infringe Plaintiff's "GET LUCKY" mark.  Defendants

moved to change venue and, on August 9, 2011, the case was transferred to this Court, which has

jurisdiction of the action pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.  Three motions are now

before the Court: 1) Defendants' motion for summary judgment; 2) Plaintiff's motion for leave

to file an amended complaint; and 3) Plaintiff's motion for sanctions against Defendants for

contempt.  The Court has reviewed carefully all of the parties' submissions and, for the

following reasons, Defendants' motion for summary judgment is granted, and Plaintiff's motions

for leave to file an amended complaint and for sanctions are denied.

SPA-2

BACKGROUND

The following facts are undisputed unless otherwise indicated.  Lucky Brand is a

clothing designer that has been selling vintage-inspired jeans and casual lifestyle apparel for over

twenty years.  (Defendants' Rule 56.1 Statement ¶ 1[1].)  Lucky Brand is the owner of numerous

trademarks registered with the USPTO, including "Lucky Brand," a Clover Design Mark, and

"Lucky Brand Dungarees of America" (and associated design).  (Id. ¶ 4.)  Marcel is a Florida-

based corporation that owns the trademark GET LUCKY.  (Compl. ¶¶ 5, 13.)

The 2001 Action

On September 9, 2001, Marcel filed a lawsuit against Lucky Brand and Federated

Department Stores in the United States District Court for the Southern District of Florida,

asserting claims for federal and common law trademark infringement and unfair competition,

based on Lucky Brand's use of the "GET LUCKY" mark.  (Defendants' Rule 56.1 Statement

¶ 12.)  Marcel later filed another action against Liz Claiborne in the same court with similar

allegations.  (Id. ¶ 13.)  The two actions were consolidated under the caption Marcel Fashion

Group, Inc. v. Lucky Brand Dungarees, Inc., and Federated Department Stores, Inc., Case No.

01-7495-Civ-Dimitrouleas (S.D.Fla.) (the "2001 Action").  (Id.; see also Declaration of Darren

W. Johnson (hereinafter "Johnson Decl.") Exh. 3.)  In May 2003, the parties settled the 2001

Action pursuant to a Release and Settlement Agreement.  (Defendants' Rule 56.1 Statement

¶ 14; Johnson Decl., Exh. 6.)  The Agreement provided that Defendants would desist "from use

---

[1]    References to the parties' Rule 56.1 Statements incorporate the underlying evidence.
Facts characterized as undisputed are acknowledged as such by the parties, based on
evidence as to which there is no nonconclusory contradictory evidentiary proffer, or
on court records.

of 'Get Lucky' as a trademark, trade name, brand, advertising slogan or tag line in connection

with the advertising, promotion or sale of jeans, shirts, t-shirts, shorts, tops, bottoms, pantsuits

and fragrances." (Johnson Decl., Exh. 6 ¶ 7.)  The Agreement also acknowledged "Lucky

Brand's rights to use, license and/or register the trademark LUCKY BRAND and/or any other

trademarks, trade names, brands, advertising slogans or tag lines owned, registered and/or used

by Lucky Brand in the United States and/or in any foreign country as of the date of [the]

Agreement." (Id. ¶ 8.)


The 2005 Action

            In 2004, Marcel granted a license to Ally Apparel Resources LLC and/or Key

Apparel Resources, Ltd. (collectively, "Ally"), and Ally launched a "Get Lucky" line of

jeanswear that competed with Lucky Brand's clothing collections.  In 2005, Lucky Brand filed

an action in this Court, alleging that Ally's "Get Lucky" products infringed the Lucky Brand

trademarks.  (Lucky Brand Dungarees, Inc. et al. v. Ally Apparel Resources et al., 05 cv 6757

(hereinafter "2005 Action"), Complaint ¶¶ 47, 58-60.)  Marcel and Ally asserted counterclaims

against Lucky Brand, alleging that Marcel was the senior user of the "GET LUCKY" mark, and

that Lucky Brand's use of "GET LUCKY" and the other Lucky Brand marks infringed Marcel's

trademark rights and breached the 2003 Release and Settlement Agreement.  (Marcel's

Counterclaims, September 13, 2005, 05 cv 6757, ECF No. 40.)  Marcel and Ally sought a

permanent injunction prohibiting Lucky Brand "[f]rom using the accused trademark 'GET

LUCKY' or any other designation, service mark, or trademark similar to counter-plaintiffs' GET

LUCKY trademark complained of herein, including the confusingly similar use of 'Lucky

Brand' or 'Lucky,' in any way, including, in connection with clothing, jeans, or any similar

**SPA-4**

goods which are likely to cause confusion." (Id. at p. 42.)[2]

On April 22, 2009, this Court entered an order granting Marcel partial summary judgment as to certain of its counterclaims, and issued a permanent injunction (the "April 22, 2009, Injunction") which prohibited Lucky Brand "from using in commerce any reproduction, counterfeit, copy or any colorable imitation of Marcel Fashions' GET LUCKY trademark on or in connection with men's and women's apparel, fragrances, and accessories." (April 22, 2009 Injunction, 05 cv 6757, ECF No. 183.) In May 2009, the parties filed a Second Amended Joint Pre-Trial Statement in anticipation of trial of the remaining unresolved issues in the case. As part of this statement, Marcel identified the question of "Whether Marcel is entitled to an injunction against Lucky Brand enjoining Lucky Brand from selling merchandise using GET LUCKY, LUCKY, LUCKY BRAND or any other mark incorporating Lucky," as an issue yet to be decided. (Amended Pretrial Statement, April 28, 2009, 05 cv 6757, ECF No. 186 ¶ 31.) The parties' remaining claims were tried before this Court and a jury, beginning in April 2010. After the jury rendered its verdict (which included findings that Lucky Brand had infringed the Lucky Brand marks, and actual and punitive damages determinations), the parties negotiated and drafted jointly a Final Order and Judgment, which incorporated by reference the Court's prior rulings as well as the jury's verdict, providing, in relevant part that:

> Ally's use of GET LUCKY as licensed from Marcel Fashions constituted willful infringement of Lucky Brand's trademarks, but Marcel established its prior

---

[2]   At several points over the course of their lengthy litigation, the parties have changed the terms they use to describe the various marks at issue. In particular, while Plaintiff, in earlier litigation, distinguished between the GET LUCKY mark and other Lucky Brand marks, in this motion practice Plaintiff often confusingly refers to *all* the marks as the GET LUCKY marks. For purposes of this motion, the Court will use the term "GET LUCKY" to refer only to the GET LUCKY mark, and will use the term "Lucky Brand marks" to refer to all other marks, including any use of the word Lucky.

ownership, registration and use of GET LUCKY which provides a complete
defense to all claims of infringement and establishes priority over Lucky Brand
Parties' trademarks.

Lucky Brand infringed Marcel Fashion's GET LUCKY trademark by using GET
LUCKY, the LUCKY BRAND trademarks, and any other trademarks including
the word "Lucky" after May 2003.

For Lucky Brand's infringement of Marcel Fashion's GET LUCKY trademark on
men's and women's t-shirts and on women's long sleeved shirts, and for their
breach of the settlement agreement by using GET LUCKY in connection with
fragrance advertising, Marcel Fashion is awarded $10,000 in compensatory
damages, and $140,000 in punitive damages.

For Lucky Brand's infringement of Marcel Fashion's GET LUCKY trademark by
their use of GET LUCKY, the LUCKY BRAND trademarks and any other marks
including the word "Lucky" after May 2003, Marcel Fashion is awarded $10,000
in compensatory damages, and $140,000 in punitive damages.

The parties have jointly drafted this order and agree to waive any and all rights
pursuant to Federal Rules of Civil Procedure 59 and 60.  The parties further agree
to waive any and all rights to appeal this order.

(Final Order and Judgment, June 1, 2010, 05 cv 6757, ECF No. 248.)  While the Final Order and

Judgment incorporates by reference the Court's April 22, 2009, Injunction concerning the GET

LUCKY mark, it contains no other provision for injunctive relief.


The Instant Action

On April 29, 2011, Marcel filed this action in the Southern District of Florida,

seeking injunctive relief based on Defendants' continued use of the Lucky Brand marks.  In its

complaint ("Complaint"), Marcel conceded that the action was based on Defendants' continued

use of "the Lucky Brand marks in the identical manner and form and on the same goods for

which [Defendants] were found liable for infringement [in the 2005 Action]."  (Compl. ¶¶ 15-16,

26-28, 33-40.)  On May 4, 2011, Marcel filed a motion for a permanent injunction in the Florida

district court, seeking an order that Defendants be enjoined from "using, displaying, advertising,

or selling their goods under, or from otherwise doing business under the 'Lucky Brand'

trademarks and any other mark including the word 'Lucky' and any confusingly similar

alternative or variation thereof." (Motion for Permanent Injunction, May 4, 2011, ECF No. 5 at

p. 13.) In its brief in support of that motion, Marcel asserted that Defendants' use of the Lucky

Brand marks had been "wholly consistent with their use prior to the entry of the Final Order and

Judgment" and acknowledged that "this case is not a new claim . . . but rather is based on the

judicial finding that the marks used on the same goods in the identical manner has continued

despite the entry of the Final Order and Judgment." (Id. at pp. 10 - 11.)

On May 27, 2011, Defendants moved to transfer the action to this Court. (Motion

to Change Venue, May 27, 2011, ECF No. 24.) In its opposition to the motion to transfer venue,

Marcel admitted that "[t]here is an injunction against Defendants using the GET LUCKY mark,"

and stated that "Plaintiff now seeks an injunction against Defendants using the LUCKY BRAND

marks since Defendants have continued to use the infringing marks . . . after entry of the Final

Order and Judgment." (Response to Motion to Change Venue, June 6, 2011, ECF No. 33 at p.

2.) Marcel continued:

> The Final Order and Judgment is clear on its face. While the Final Order and
> Judgment contains an injunctive provision against Defendants' using Marcel's
> GET LUCKY trademark, it does not contain specific injunctive language against
> Defendants using its LUCKY BRAND marks and any mark including the word
> Lucky.
>
> If the Final Order and Judgment did contain that specific language, then this
> would be an action for contempt. Instead, this is an action for injunctive relief
> and for damages and is filed to prevent Defendants from continuing its [sic] acts
> of infringement after Judge and jury have determined their use to be infringing.

(Id.) Judge William J. Zloch referred the motion to transfer venue to Magistrate Judge Robin

Rosenbaum, who recommended that the court grant the motion and transfer the action to this

district. Judge Rosenbaum noted that "[a]t its core, Marcel's current action asserts the same infringement claims that Marcel litigated for five years and eventually prevailed on before the New York federal court. The only real difference is that Marcel now seeks an equitable remedy that it was not awarded - and arguably waived - despite having ample opportunity and incentive to pursue that remedy." (Report and Recommendation, July 19, 2011, ECF No. 40 at p. 16.) Judge Zloch adopted Judge Rosenbaum's report and recommendation, granted Defendants' motion to transfer, and the action was transferred to this Court on August 9, 2011. (Transfer Order, August 8, 2011, ECF No. 44.)

Marcel filed a motion for leave to amend its complaint. Defendants thereafter moved for summary judgment and, on the following day, Plaintiff moved for sanctions against Defendants for contempt of the Final Order and Judgment in the 2005 Action.

## DISCUSSION

Defendants' Motion for Summary Judgment

"Under the doctrine of res judicata, or claim preclusion, [a] final adjudication on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Bank of India v. Trendi Sportswear, Inc., 239 F.3d 428, 439 (2d Cir. 2000) (internal quotations omitted). When determining whether a suit is barred by res judicata, the court must determine whether "the second suit involves the same 'claim'- or 'nucleus of operative fact' - as the first suit." Waldman v. Village of Kiryas Joel, 207 F.3d 105, 108 (2d Cir. 2000). Res judicata "will not bar a suit based upon legally significant acts occurring after the filing of a prior suit that was itself based upon earlier acts." Id. at 113. However, the doctrine of res judicata will bar claims based upon acts that post-date the first action, if those new claims are

"nothing more than additional instances of what was previously asserted" and the second action

is based "principally upon the common nucleus of operative facts shared with [the first]." Id.

     The principles of res judicata apply to bar the current suit.  The Final Order and

Judgment was a final adjudication on the merits of the 2005 Action, which involved the same

claims, trademarks and parties as the instant action.  Marcel's own assertions in its pleadings and

motion papers confirm this:

> "Defendants have continued to willfully . . . infringe Plaintiff's GET LUCKY
> mark by using the Lucky Brand marks in the identical manner and form and on
> the same goods for which they were found liable for infringement [in the 2005
> Action]." (Compl. ¶ 15.)
>
> "This matter has already been determined by the Southern District of New York."
> (Compl. ¶ 39.)
>
> Defendants' "use of [the Lucky Brand] marks has been continuous, unabated, and
> wholly consistent with their use prior to the entry of the Final Order and
> Judgment." (Motion for Permanent Injunction, May 4, 2011, ECF No. 5 at p. 10.)
>
> "This case is not a new claim . . . but rather is based on the judicial finding that
> the marks used on the same goods in the identical manner has continued despite
> the entry of the Final Order and Judgment." (Id. at pp. 10 - 11.)

These admissions, and the Complaint as a whole, make clear that Marcel's purported new

allegations are "nothing more than additional instances of what was previously asserted [in the

2005 Action]" and that the instant action is based "principally upon the common nucleus of

operative facts shared with [the 2005 Action]." Waldman, 207 F.3d at 113.  Here, Marcel merely

seeks broad injunctive relief prohibiting Lucky Brand from using the same trademarks that were

the subject of the 2005 Action, and further damages for use of those marks.  Marcel could have,

and indeed did, seek such injunctive relief in the 2005 Action.  Its negotiated final order did not,

however, provide for such relief, and it provided for a single monetary award for use of the

marks "after May 2003," without any reservation of rights to seek further damages for

prospective use.  A successive suit seeking a different remedy for the same conduct – like the

instant action – is clearly barred by the doctrine of res judicata.  See, e.g., Jim Beam Brands Co.

v. Beamish & Crawford Ltd., 937 F.2d 729, 736 (2d Cir. 1991) ("Res judicata . . . prevents the

subsequent litigation by either party of any ground of recovery that was available in the prior

action, whether or not it was actually litigated or determined" and noting that, accordingly, "if

[injunctive relief] was available to [a party in the prior proceeding], that availability would

preclude the [party's] present pursuit of such a claim").

> Plaintiff does not address the merits of Defendants' res judicata analysis,

choosing rather to base its opposition to Defendants' motion for summary judgment almost

entirely on a new contention – that the April 22, 2009, Injunction and, consequently, the Final

Order and Judgment, actually *did* enjoin Defendants from using, not only the GET LUCKY

mark, but also the other Lucky Brand marks, including the word Lucky.  This argument has no

support in the record or in the plain language of the April 22, 2009, Injunction.  The injunction

was issued in the context of Marcel's motion for sanctions against Lucky Brand for various

discovery violations.  Magistrate Judge Dolinger issued a Memorandum and Order finding that

Lucky Brand had engaged in numerous discovery violations, and that, as a consequence of

Lucky Brand's wrongful conduct, Marcel was entitled to a preclusive judicial finding that, as a

matter of law, Lucky Brand infringed the GET LUCKY mark and breached the parties' earlier

settlement agreement.  This Court subsequently entered an order on April 22, 2009, granting

Marcel partial summary judgment and a permanent injunction.  All of the Lucky Brand marks –

not just the GET LUCKY mark – were at issue when this Court issued the April 22, 2009,

Injunction.  (See, e.g., Marcel's Counterclaims in 2005 Action, 5 cv 6757,  Sep. 13, 2005, ECF

No. 40 at p. 42 (expressly requesting that Defendants be permanently enjoined from using the

'GET LUCKY' trademark "or any trademark confusingly similar to the GET LUCKY trademark

including 'Lucky Brand' or 'Lucky'".) Accordingly, if the April 22, 2009, Injunction had been

meant to cover all the Lucky Brand marks, it would have specifically identified those other

marks. (See 5 cv 6757, April 22, 2009, ECF No. 183 (enjoining Defendants from using "any

reproduction, counterfeit, copy or any colorable imitation of [only] Marcel Fashions' GET

LUCKY trademark").)

       Additionally, Marcel itself has repeatedly admitted that the April 22, 2009,

Injunction does not apply to the Lucky Brand marks.  For example, in the parties' Second

Amended Joint Pre-Trial Statement, filed after the injunction was issued, Marcel specifically

identified the question of whether it was entitled to a permanent injunction against *all* of the

Lucky Brand marks as a legal issue to be decided by the Court.  (See Amended Pretrial

Statement, 05 cv 6757, April 29, 2009, ECF No. 186 at ¶ 31.)  Similarly, in its response to

Defendants' motion to transfer this case to this district, Marcel admitted that "while the Final

Order and Judgment contains an injunctive provision against Defendants' using Marcel's GET

LUCKY trademark, it does not contain specific injunctive language against Defendants using its

LUCKY BRAND marks and any mark including the word Lucky." (Response to Motion to

Change Venue, June 6, 2011, ECF No. 33 at p. 2.)[3]

       While Plaintiff relies heavily on GMA Accessories, Inc. v. Eminent, Inc., No. 07

Civ. 3219(LTS)(DF), 2008 WL 2355826 (S.D.N.Y. May 29, 2008), that decision is inapposite.

The injunction in that case was the product of an accepted Rule 68 offer of judgment, and

---

[3]    There are numerous other examples in the record of Marcel's acknowledgment of the
limited scope of the April 22, 2009, Injunction, notably Marcel's decision to initially
file this suit as a trademark infringement action in the Southern District of Florida,
rather than as an action for contempt before this Court. (See, e.g., Response to
Motion to Transfer, June 6, 2011, ECF No. 33 at pp. 2-3.)

prohibited the defendant from "using the mark CHARLOTTE or any marks similar to or substantially indistinguishable therefrom, including the mark CHARLOTTE SOLNICKI." Id., at *1. Shortly after the injunction was entered, however, the parties began to dispute whether the injunction was broad enough to cover the mark "CHARLOTTE RONSON." Defendant moved under Fed. R. Civ. P. 60 to withdraw, vacate or modify its offer of judgment, arguing that its proposed injunction was meant only to cover the specific marks "CHARLOTTE" and "CHARLOTTE SOLNICKI." This Court denied the motion, finding that the language of Defendant's Rule 68 offer was broader than the interpretation advanced by the Defendant in the Rule 60 motion practice. When the Defendant thereafter sold goods under the mark "CHARLOTTE RONSON," Plaintiff moved for civil contempt sanctions, and Magistrate Judge Debra Freeman recommended that Defendant be held in civil contempt.[4] There are several crucial differences between GMA and the instant case. Notably, the defendant in GMA had continued to use the "CHARLOTTE RONSON" mark even after the Court clarified that the injunction covered "two-word marks that were 'similar to' the 'CHARLOTTE' mark" and plainly suggested that the "CHARLOTTE RONSON" mark "likely fell within the injunction's proscriptions." Id., at *9. Additionally, unlike the plaintiff in GMA, Marcel has repeatedly admitted that the April 22, 2009, Injunction does not apply to any marks beyond GET LUCKY and, unlike the injunction in GMA, which was drafted solely by the defendant as a Rule 68 Offer of Judgment (id., at *1), the injunction at issue here was jointly submitted by both Marcel and Lucky Brand.

Marcel's final arguments - that *Defendants* bore the burden of drafting the April

---

[4]    The Report and Recommendation was never adopted by this Court.

MARCEL FASHIONS MSJ.WPD          VERSION 9/25/12                                    11

22, 2009, Injunction and Final Order and Judgment to specify that any injunctive relief applied

only to the GET LUCKY mark, and that the Court's finding that Lucky Brand infringed

Marcel's trademarks automatically means that Lucky Brand is enjoined from further use of those

trademarks - are similarly unavailing. See, e.g., Hart v. Hart, No. 18 MS 0302, 2007 WL 187690

(S.D.N.Y. Jan. 22, 2007) (party seeking the injunction bears the burden of establishing that it is

justified); eBay Inc v. MercExchange, L.L.C., 547 U.S. 388, 392 (2006) (an injunction does not

automatically follow a determination of infringement); Jim Beam Brands, 937 F.2d at 737

(same).


Plaintiff's Motion for Leave to File an Amended Complaint

          "Leave to amend a pleading should be freely granted when justice so requires."

Duling v. Gristede's Operating Corp., 265 F.R.D. 91, 96 (S.D.N.Y. 2010).  However, the court

may deny leave to amend, if the amendment "(1) has been delayed unduly, (2) is sought for

dilatory purposes or is made in bad faith, (3) [would prejudice] the opposing party . . . or (4)

would be futile."[5] Id. (alteration in original).  The trial court has broad discretion to decide a

motion to amend.  Id.

          Here, the Court has reviewed Marcel's Proposed Amended Complaint ("PAC"),

which proposes the following alterations to the original Complaint: the addition of three

individual defendants; conclusory allegations as to Defendants' "new and continued" use of the

Lucky Brand trademarks; conclusory allegations as to Defendants' purchase of search engine

keywords involving the Lucky Brand trademarks; allegations that certain of Defendants'

---

[5]      A "proposed amendment is considered futile when it fails to state a claim." Duling,
         265 F.R.D. at 103.

registered marks are fraudulent; and allegations that Defendants should be held in contempt for

violating the Final Order and Judgment from the 2005 Action.  For substantially the reasons

outlined in Section IV(A) of Defendants Memorandum of Law in Opposition to Plaintiff's

Motion for Leave to Amend, the Court finds that the PAC fails to allege any "new" facts

sufficient to defeat the application of res judicata.[6]  Accordingly, in light of the Court's

determination that Defendants are entitled to summary judgment on the basis of res judicata,

Plaintiff's motion for leave to amend is denied as futile.


Plaintiff's Motion for Sanctions Against Defendants for Contempt

Plaintiff seeks an order finding Defendants in contempt for their alleged

violations of the April 22, 2009, Injunction and the Final Order and Judgment, based on their

continued use of the Lucky Brand marks.  As explained above, the April 22, 2009, Injunction

and the Final Order and Judgment enjoin Defendants from using only reproductions, counterfeits

and imitations of the GET LUCKY mark, and do not prohibit use of the other Lucky Brand

marks or the word Lucky.[7]  Accordingly, Plaintiff's motion for sanctions is denied.

---

[6]     In fact, Marcel concedes that "the proposed amended complaint alone does not
defeat Defendants' Motion [for Summary Judgment]."  (Opp. to Motion for
Summary Judgment p. 10.)

[7]     Plaintiff does not allege that Defendants have resumed use of the GET LUCKY mark.

CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted,

and Plaintiff's Motions for Leave to File an Amended Complaint and for Sanctions Against

Defendants for Contempt are denied.  This Memorandum Opinion and Order resolves docket entry

nos. 61, 64, and 72.  The Clerk of Court is respectfully requested to enter judgment for Defendants

and close this case.

SO ORDERED.

Dated: New York, New York
       September 25, 2012

LAURA TAYLOR SWAIN
United States District Judge

**SPA-15**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MARCEL FASHIONS GROUP, INC.,
                                    Plaintiff,

                -against-

LUCKY BRAND DUNGAREES, INC., LIZ
CLAIBORNE, INC., and LUCKY BRAND
DUNGAREES STORES, INC.,
                                    Defendants.
-------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___9/26/12___

11 **CIVIL** 5523 (LTS)
**JUDGMENT**

Whereas on August 9, 2011, this case was transferred to this Court from the Southern

District of Florida on Defendants' motion to change venue; three motions are now before this Court:

1) Defendants' motion for summary judgment; 2) Plaintiff's motion for leave to file an amended

complaint; and 3) Plaintiff's motion for sanctions against Defendants for contempt, and the matter

having come before the Honorable Laura T. Swain, United States District Judge, and the Court, on

September 25, 2012, having rendered its Memorandum Opinion and Order granting Defendants'

Motion for Summary Judgment, and denying Plaintiff's Motions for Leave to File an Amended

Complaint and for Sanctions Against Defendants for Contempt, and directing the Clerk of Court to

enter judgment for Defendants and close this case, it is,

        **ORDERED, ADJUDGED AND DECREED:**  That for the reasons stated in the

Court's Memorandum Opinion and Order dated September 25, 2012, Defendants' Motion for

Summary Judgment is granted, and Plaintiff's Motions for Leave to File an Amended Complaint and

for Sanctions Against Defendants for Contempt are denied; accordingly, judgment is entered for

Defendants and the case is closed.

**Dated:**  New York, New York
        September 26 2012

                                    **RUBY J. KRAJICK**
                                    _____
                                    **Clerk of Court**
                        **BY:**
                                    _____
THIS DOCUMENT WAS ENTERED              **Deputy Clerk**
    THE DOCKET ON_____